NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

GWENDOLYN WILLIAMS,

    Plaintiff,

v.

UNITED STATES DEPARTMENT OF
VETERANS AFFAIRS - NEW JERSEY
HEALTHCARE SYSTEM, et al,

    Defendants.
_____

**Hon. Dennis M. Cavanaugh**

OPINION

Civil Action No. 11-3719 (DMC)(MF)

DENNIS M. CAVANAUGH, U.S. District Judge

    This matter comes before the Court on Defendant Sharon Williams' Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(1) (ECF. No. 6) and Defendant United States Department of Veterans Affairs - New Jersey Health Care System's Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(1) (ECF. No. 7). These motions were decided without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. After careful review of the parties' submissions and based upon the following, Defendants' motions are granted.

I.    BACKGROUND AND PROCEDURAL HISTORY

    This case concerns the termination of an employee by her employer, and the decision by the employee's union not to arbitrate that termination. Plaintiff, Gwendolyn Williams ("Plaintiff"), was a health care aide employed by Defendant United States Department of Veterans Affairs - New Jersey Health Care System ("Defendant VA") in East Orange, Essex

County, New Jersey.  (Compl. ¶ 1 (ECF. No. 1-2)).  Defendant Sharon Williams ("Defendant Williams") is the President of the American Federation of Government Employees Local 2425 ("AFGE").  (Compl ¶ 5).  The AFGE is the collective bargaining agent for certain categories of employees at Defendant VA, including the Plaintiff's category.  (Compl. ¶ 3).  At all times relevant to this complaint, a national collective bargaining agreement ("CBA") was in place which included Plaintiff, Defendant VA, and the AFGE, and which created certain rights and duties between the parties.  (Compl. ¶ 4).

On or about April 25, 2007, Defendant VA terminated Plaintiff's employment for alleged acts of misconduct in the course of her employment.  (Compl. ¶ 3).  Plaintiff alleges that the CBA restricted the right to elect arbitration of her termination to the AFGE, but that the AFGE and Defendant Williams declined to arbitrate, and instead consented to an appointment of private counsel to arbitrate Plaintiff's case.  (Compl. ¶¶ 8-12).  Plaintiff further alleges that "neither party hastened to schedule a date for the arbitration," and that application was made directly to the arbitrator to establish a specific date for the hearing.  (Compl. ¶¶ 13-14).  Plaintiff goes on to assert that Defendant Williams, acting both individually and in her official capacity as an agent of AFGE, "maliciously, and in bad faith, and in breach of contract and in violation of the implied covenant of good faith and fair dealings," and in conspiracy with Defendant VA, interfered with Plaintiff's prospective economic advantages by cancelling AFGE's consent to allow Plaintiff to prosecute her own grievance in arbitration.  (Compl. ¶ 15).  Additionally, Plaintiff alleges that Defendant VA and its agents conspired with each other and the other defendants in bad faith, and in violation of the implied covenant of good faith and fair dealing, to "maliciously and negligently" interfere with Plaintiff's contract with AFGE.  (Compl. Count Two, ¶ 2).

Plaintiff filed her complaint containing these allegations with the Superior Court of New Jersey, Law Division, Essex County, on May 2, 2011. In that complaint, Plaintiff named as Defendants the VA, Sharon Williams, the AFGE, and John and Jane Doe (fictiously named employees of Defendant VA). (Compl. ¶¶ 1-3). On June 13, 2011, Plaintiff voluntarily dismissed the AFGE from this action. (Def. Defendant Williams' Br. 4 (ECF. No. 6-1)). Plaintiff and Defendant Williams then stipulated that Defendant Williams would have until July 18, 2011 to answer the Complaint. (Def. Defendant Williams' Br. 4-5).

On June 28, 2011, Defendant VA removed the case to this Court. (ECF. No. 1). That same day, the case was referred to arbitration. On July 1, 2011, both Defendant VA and Defendant Williams were granted extensions to answer, set for July 19, 2011 (ECF. No. 2-4). On July 18, 2011, Defendant Williams filed her present Motion to Dismiss for Lack of Subject Matter Jurisdiction, asserting that this Court lacks jurisdiction to hear this case because the claims against Defendant Williams must be resolved before the Federal Labor Relations Authority. (Def. Defendant Williams' Br. 1).

On July 19, 2011, Defendant VA filed their present Motion to Dismiss the Complaint and Vacate Referral to Arbitration, also asserting that claims against Defendant VA must be resolved before the Federal Labor Relations Authority, and further asserting that Defendant VA is a sovereign federal agency, and thus cannot be sued for intentional tort claims. (Def. VA's Br. 3, 7 (ECF. No. 7-1)). As Defendant VA asserts that this Court lacks jurisdiction to hear this case, Defendant VA also contends that the referral to arbitration should be vacated. (Def. VA's Br. 10). On September 6, 2011, Defendant Williams' attorney filed a letter with this Court, correctly noting that Plaintiff's response to their Motion to Dismiss was due on August 1, 2011, and that

3

Plaintiff to date had not responded to the motion, nor had she sought an extension of time for leave to respond. (ECF. No. 9).[1]

II.     LEGAL STANDARD

A. FED. R. CIV. P. 12(b)(1)

Plaintiff bears the burden to prove that subject matter jurisdiction exists. Wyeth and Cordis Corp. v. Abbott Labs., 2008 U.S. Dist. LEXIS 38313, * 2, 2008 WL 2036805 (D.N.J. May 8, 2008) (JAP). In Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884 (3d Cir. 1977), the Third Circuit explained that Rule 12(b)(1) motions fall into two categories: facial and factual. Int'l Devs. Corp. v. Richmond, 2009 U.S. Dist. LEXIS 106326, at * 2, 2009 WL 3818141 (D.N.J. Nov. 13, 2009) (GEB). "A facial attack on jurisdiction is directed to the sufficiency of the pleading as a basis for subject matter jurisdiction." Id. Accordingly, under a facial attack, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto in the light most favorable to the plaintiff." Gould Elecs., Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000).

In contrast, when the court considers a factual attack on jurisdiction under 12(b)(1), "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear

---

[1] The Court notes that Plaintiff's failure to respond may subject her to dismissal for want of prosecution. See generally Green v. Essex County Superior Court Clerk, No. 02-1872, 2006 WL 932055 at *1 n.1 (D.N.J. Apr. 6 2006) (GEB) (Alternatively dismissing case for want of prosecution). Plaintiff did file a letter requesting an extension of time dated Sept. 9, 2011, but the Court denied Plaintiff's request because good cause was not shown. In the interests of completeness the Court will still address the merits of the parties' motions. The Defendants' motions, however, will be considered unopposed.


the case." Mortensen, 549 F.2d at 891. No presumption of truthfulness attaches to the allegations of the complaint insofar as they concern subject matter jurisdiction. Id. Should factual issues arise regarding subject matter jurisdiction, the court may consider exhibits outside the pleadings. Gould Elecs., 220 F.3d at 178.

B. Sovereign Immunity & The Federal Tort Claims Act

The United States has sovereign immunity from suit, except to the extent that it consents to be sued. See FDIC v. Meyer, 510 U.S. 471, 475 (1994); United States v. Mitchell, 445 U.S. 535, 538 (1980). The Federal Tort Claims Act provides a limited waiver of the United States' immunity from tort claims. See United States v. S.A. Empresa de Viacao Aerea Rio Grandense, 467 U.S. 797, 808 (1984). Claims for which United States has not waived sovereign immunity under the FTCA must be dismissed for lack of subject matter jurisdiction. See Bernitsky v. United States, 620 F.2d 948, 950 (3d Cir. 1980). "A party suing the federal government bears the burden of establishing that the United States has unequivocally waived its immunity from suit." United States v. Schiaffino, 317 Fed. Appx. 105, 106 (3d Cir. Mar.25, 2009) (citing Baker v. United States, 817 F.2d 560, 562 (9th Cir. 1987), cert. denied, 487 U.S. 1204 (1988)).

In some instances, federal officials acting in their official capacity can be subject to suit for constitutional torts under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). Bivens, however, does not apply to the United States, its agencies or federal officers sued in their official capacities, as "[t]his implied right of action only applies against the individual [federal employees] in their individual capacities [because] The United States and its officers in pursuit of their official duties remain protected by sovereign

the case." Mortensen, 549 F.2d at 891. No presumption of truthfulness attaches to the allegations of the complaint insofar as they concern subject matter jurisdiction. Id. Should factual issues arise regarding subject matter jurisdiction, the court may consider exhibits outside the pleadings. Gould Elecs., 220 F.3d at 178.

B. Sovereign Immunity & The Federal Tort Claims Act

The United States has sovereign immunity from suit, except to the extent that it consents to be sued. See FDIC v. Meyer, 510 U.S. 471, 475 (1994); United States v. Mitchell, 445 U.S. 535, 538 (1980). The Federal Tort Claims Act provides a limited waiver of the United States' immunity from tort claims. See United States v. S.A. Empresa de Viacao Aerea Rio Grandense, 467 U.S. 797, 808 (1984). Claims for which United States has not waived sovereign immunity under the FTCA must be dismissed for lack of subject matter jurisdiction. See Bernitsky v. United States, 620 F.2d 948, 950 (3d Cir. 1980). "A party suing the federal government bears the burden of establishing that the United States has unequivocally waived its immunity from suit." United States v. Schiaffino, 317 Fed. Appx. 105, 106 (3d Cir. Mar.25, 2009) (citing Baker v. United States, 817 F.2d 560, 562 (9th Cir. 1987), cert. denied, 487 U.S. 1204 (1988)).

In some instances, federal officials acting in their official capacity can be subject to suit for constitutional torts under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). Bivens, however, does not apply to the United States, its agencies or federal officers sued in their official capacities, as "[t]his implied right of action only applies against the individual [federal employees] in their individual capacities [because] The United States and its officers in pursuit of their official duties remain protected by sovereign

immunity." Defendant Williamson v. U.S. Dept. of Agric., 815 F.2d 368, 380 (5th Cir.1987) (collecting cases); see also F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994), Jaffee v. United States, 592 F.2d 712, 717-18 (3d Cir. 1979), cert denied, 441 U.S. 961 (1979) (no waiver of the United States' sovereign immunity for suits alleging constitutional violations).

III.     DISCUSSION

A. Defendant Gwendolyn Defendant Williams' Motion to Dismiss

A motion to dismiss on the basis of FED. R. CIV. P. 12(b)(1) for lack of subject matter jurisdiction made prior to the filing of the defendant's answer is a facial challenge to the complaint. Bennett v. Atlantic City, 288 F. Supp. 2d 675, 678 (D.N.J. 2003) (citing Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). The Defendants submitted their motions to dismiss in lieu of an answer. Review of a facial challenge in this context requires the Court to accept the allegations in the Complaint as true, and therefore, the Court will view the Complaint in the light most favorable to the Plaintiff. Id.

Defendant Williams argues that Plaintiff's claims are exclusively covered by the Federal Labor Relations Authority (FLRA), and that claims of state law violations by the Plaintiff amount to mere "artful pleading," and do not remove this case from the exclusive authority of the FLRA. (Def. Defendant Williams' Br. 9). With respect to Defendant Defendant Williams, then, the ultimate question becomes whether Plaintiff's claims fall exclusively within the jurisdiction of the FLRA, and thus outside the jurisdiction of this Court.

The FLRA derives its authority from Title VII of the Civil Service Reform Act of 1978 (CSRA), which comprehensively overhauled the federal civil service, and allowed collective

bargaining in the public sector. Lindahl v. OPM, 470 U.S. 768, 773 (1985). The FLRA is the federal agency responsible for governing labor-management relations among non-postal federal agencies, their employees, and the employees' unions. 5. U.S.C. § 7104, 7105. The FLRA's jurisdiction in these matters, as defined by the CSRA, is exclusive. Indeed, no private cause of action in federal court exists for a breach by a union representing federal employees of its statutory duty of fair representation, as Congress "vested exclusive enforcement authority over this duty in the . . . (FLRA) and its General Counsel. . . ." Karahalios v. Nat'l Fed'n of Fed. Employees, 489 U.S. 527, 529 (1989). Judicial review of FLRA decisions is limited to three specific instances: a party may request review of a "final" FLRA order in the courts of appeals; the FLRA may petition the courts of appeals to seek enforcement of its orders; and the FLRA may seek an injunction in district court after issuance of a complaint. 5 U.S.C. § 7123.

      The CSRA defines who and what falls within its authority. 5. U.S.C. § 7103. Under the act, "Employee" includes an individual who is employed by an agency. 5. U.S.C. § 7103(a)(2)(A). In turn, "Agency" is broadly defined as an "Executive agency," with a set of enumerated exclusions. 5. U.S.C. § 7103(a)(3). The CSRA defines "Labor Organization" as "an organization composed in whole or in part of employees, in which employees participate and pay dues, and which has as a purpose the dealing with an agency concerning grievances and conditions of employment . . . ." 5. U.S.C. § 7103(a)(4). "Exclusive Representative" includes labor organizations which are "certified as the exclusive representative of employees in an appropriate unit pursuant to section 7111 of this title. . . ." 5. U.S.C. § 7103(a)(16)(A).

      Defendant VA falls within this statutory definition of "Agency." As Plaintiff was employed by Defendant VA during the events that led to this suit, she too is clearly within the

statutory framework as an "employee." Further, as admitted in Plaintiff's complaint, the AFGE is both a "Labor Organization" and an "Exclusive Representative" within the meaning of the CSRA.

The CSRA provides the full, and exclusive, scheme of remedies for claims arising out of the federal employment context. See, e.g., Sarullo v. United States Postal Serv., 352 F.3d 789, 795 (3d Cir. 2003) (holding that the court lacked subject matter jurisdiction over plaintiff federal employee's claims because the "case ar[ose] out of the employment context"). This District has previously found claims concerning obligations under a CBA and claims for breach of the obligation of good faith and fair dealing to arise out of the federal employment context, and are thus preempted by the CSRA. See, e.g., Whiting v. U.S. Army, No. 08–435, 2008 WL 4104596 at *4 (D.N.J. Sept. 4, 2008) (JLL) (holding claims concerning "the Army's alleged failure to comply with its obligations under the CBA and . . . breach of the Army's obligation of good faith and fair dealing" preempted by the CSRA). As both Plaintiff and Defendant Williams fall within the statutory definitions of the CSRA, Plaintiff's claims against Defendant Williams in her official capacity for breach of the implied covenant of good faith and fair dealing are preempted by the CSRA, and this Court has no jurisdiction over those claims.

Plaintiff cannot change this result by framing her allegations as traditional State tort law remedies. While Plaintiff attempts to allege a claim of tortious interference with her prospective economic advantage, the essence of her allegations still flow from the employment context, and more specifically, from a breach of the CBA. (Compl. ¶ 15). The conduct complained of is the AFGE's withdrawal of an alleged agreement to allow Plaintiff to arbitrate a grievance under the CBA. Id. When the substance of a plaintiff's claims amount to a breach of fair representation or

violations of the CBA, such claims are preempted by the CSRA, regardless of how they are framed. See Whiting, 2008 WL 4104596 at *4 ("Notwithstanding Plaintiff's assertion that state law applies to his claims, the gravamen of the Complaint states a claim for breach of the CBA and breach of the covenant of good faith and fair dealing under the CBA. Thus, the claims here are preempted by the CSRA. . . .") This is a Court of limited jurisdiction, and clever pleading cannot allow plaintiffs to create jurisdiction in this Court where Congress has clearly restricted it.

Nor can Plaintiff dodge the jurisdictional restrictions of the FLRA by suing Defendant Williams in her individual capacity. In Atkinson v. Sinclair Refining Co., the Supreme Court held that "union agents" are not personally liable to third parties for acts performed on the union's behalf in the collective bargaining process. 370 U.S. 238, 247-49 (1962). Atkinson, therefore, stands for the rule that in a private sector labor dispute, state law claims against individuals acting as union representatives within the collective bargaining process are foreclosed. See, e.g., Peterson v. Kennedy, 771 F.2d 1244, 1256-57 (9th Cir. 1985), cert. denied, 475 U.S. 1122 (1986). Although Atkinson is not directly on point in this case, as Atkinson dealt with collective bargaining issues in the private sector, this Court finds the First Circuit's reasoning in Montplaisir v. Leighton, extending the Atkinson rule to public sector labor disputes, to be persuasive in this matter. 875 F.2d 1 (1st Cir. 1989).

Montplaisir v. Leighton concerned a suit by Federal Aviation Administration employees against the general counsel of the Professional Air Traffic Controllers Organization, a union to which the employees belonged. Id. at 1-2. The defendants moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), claiming, as in the case before this Court, that the CSRA pre-empted federal court jurisdiction. Id. at 2. Noting that the plaintiffs would have been barred by the Supreme

9

Court's Karahalios decision from suing their union directly, the Montplaisir court determined that permitting plaintiffs to instead sue the union's general counsel personally would be "equally disruptive" to the CSRA's provisions. Id. at 4. The Montplaisir court went on to note that as Congress "decided that a public-sector union cannot itself be sued for unfair labor practices, it would defy logic to allow disgruntled union members to accomplish much the same result by circumnavigation." Id. at 5. Determining, therefore, that the difference between the CSRA and private statutes was one "bereft of a meaningful distinction," the Montplaisir court held that "[t]o preserve the integrity of the CSRA's statutory scheme, the Atkinson rule must fully apply in the public sector." Id. Finding the Montplaisir reasoning to be sound, this Court holds that just as Plaintiff cannot sue Defendant Williams in her official capacity, nor can she maintain a suit against Defendant Williams in her individual capacity.

For these reasons, this Court lacks jurisdiction over Plaintiff's claims against Defendant Williams, and those claims are dismissed.

B. Defendant United States Department of Veterans Affairs Motion to Dismiss

The Court now turns to Plaintiff's claims against Defendant VA. Plaintiff's claims against Defendant VA are virtually identical to her claims against Defendant Williams. Courts of this district have applied the principles discussed above in suits against an employer just as they have applied in suits against a union or union officials. See, e.g., Whiting v. U.S. Army, No. 08–435, 2008 WL 4104596 (D.N.J. Sept. 4, 2008) (JLL). The Court's reasoning with respect to Plaintiff's claims against Defendant Williams, therefore, applies with equal force to Plaintiff's claims against Defendant VA. As such, further exploration of that reasoning is not required.

Alternatively, however, this Court finds grounds for dismissing Plaintiff's complaint against Defendant VA in the doctrine of sovereign immunity.

The Federal Tort Claims Act ("FTCA") is the exclusive remedy for claims of tort against employees of the government. See U.S. v. Smith, 499 U.S. 160, 161-62 (1991) (citing 28 U.S.C. § 2679(b)(1)); Schrob v. Catterson, 967 F.2d 929, 934 (1992). The nature of FTCA provides two additional reasons why Plaintiff's complaint should be dismissed as to Defendant VA. First, Defendant VA is not a proper defendant in this action because only the United States government is a proper defendant on such claims. See Kieffer v. Vilk, 8 F.Supp.2d 387, 393 (D.N.J.1998) (quoting Dilg v. U.S. Postal Serv., 635 F.Supp. 406, 407 (D.N.J.1986)). Further, the FTCA requires that a plaintiff must file his or her claim with the federal agency in question, and the agency must issue a final denial of the claim. 28 U.S.C. § 2675(a); McNeil v. United States, 508 U.S. 106, 110-11 (1993); Bialowas v. United States, 443 F.2d 1047, 1049 (3d Cir.1971). "The presentment requirement gives the agency an opportunity to pay the claim in full, to offer to settle the claim, or to deny the claim within six months." Abulkhair v. Bush, No. 08-5410, 2010 WL 2521760 at *7 (D.N.J., June 14, 2010) (DMC). Nothing in the record indicates that Plaintiff has complied with this mandatory requirement. Accordingly, Plaintiff's tort claims against Defendant VA are barred by the doctrine of sovereign immunity.

For these reasons, this Court lacks jurisdiction over Plaintiff's claims against Defendant VA, and those claims are dismissed.

IV.    CONCLUSION

For the foregoing reasons, the defendants' motions to dismiss are granted. An

11

appropriate Order accompanies this Opinion.

<div style="text-align:right">

S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

</div>

Date:      Sept. 16, 2011
Original:  Clerk
cc:        All Counsel of Record
           Hon. Mark Falk, U.S.M.J.
           File